UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

AMETHYST DAWN KIMBLE MOORE and
TIMOTHY ALLEN MOORE and
AMETHYST DAWN KIMBLE,
Administratrix of the Estate of
Elijah Allen Moore,

         Plaintiffs,

v.                                    Civil Action No. 2:15-cv-04531


RICHARD A. FERGUSON, M.D. and
MESA OF TEAMHEALTH, INC.,

         Defendants.


MEMORANDUM OPINION AND ORDER

        Pending is defendants' motion to dismiss, which

includes an alternative motion to strike, filed May 1, 2015.[1]


I.


        On July 23, 2013, expectant mother Amethyst Dawn

Kimble[2] ("Kimble") informed her obstetrician that her father had

_____

        [1]The motion was originally filed only by defendant Richard
A. Ferguson; defendant MESA of TeamHealth joined the motion and
defendant Ferguson's subsequent briefing on May 29, 2015, but
offered no additional briefing.
        [2]Since the events described herein, Kimble married Timothy
Allen Moore and assumed the name Amethyst Dawn Moore.

suffered from hemophilia.  (Compl. ¶¶ 3-4.)  Prior to December 18, 2013, at a time after it became known that Kimble's child was male, the obstetrician requested information from Kimble's pediatrician regarding Kimble's hemophilia history, and was misinformed that her brother, rather than her father, suffered from hemophilia.  (Id. ¶¶ 6-8.)  Kimble gave birth to Elijah Allen Moore ("Elijah") on February 14, 2014, in a traumatic vacuum-assisted delivery.  (Id. ¶¶ 9-10).  In the period between Elijah's birth and February 17, 2014, Elijah's nurses noted bruising and a growing contusion on his head, and that his bilirubin level had not decreased as expected.  (Id. ¶¶ 11-12.)

Despite these symptoms indicating possible internal bleeding, Elijah was discharged from the hospital on February 17, 2014, with instructions that he should be taken to the bilirubin clinic and his pediatrician on February 19, 2014. (Id. ¶¶ 13-14.)  Kimble brought Elijah to the bilirubin clinic and reported that he was "restless" and "not feeding [sic] well."  (Id. ¶ 15.)  The clinic's nurses noted Elijah was lethargic, had significant bruising, and had a climbing bilirubin level.  (Id. ¶ 16.)  Kimble and Elijah's father, Timothy Allen Moore ("Moore"), took Elijah to the pediatrician later that day, and were told Elijah was in good health, though

he had Factor VIII deficiency (Hemophilia A, a bleeding
disorder).  (<u>Id.</u> ¶¶ 17-19, 22.)

      At approximately 2:38 p.m. on February 19, 2014, after
noticing Elijah was suffering what appeared to be seizures,
Kimble and Moore took him to the emergency department of a local
hospital.  (<u>Id.</u> ¶ 23.)  Elijah was assigned to the care of
Richard A. Ferguson, M.D. ("Ferguson"), a physician board
certified in family practice medicine, but not in emergency
medicine.  (<u>Id.</u> ¶¶ 24, 28-29.)  Kimble and Moore chose this
hospital in part because the emergency department was operated
by MESA of TeamHealth, who advertised their emergency medicine
physicians as highly qualified.  (<u>Id.</u> ¶ 35.)  After arriving,
Elijah was attended by nurses at around 3:10 p.m., who noted he
was visibly jaundiced and had bruising of both hands and feet,
the right eye, and the left antecubital region.  (<u>Id.</u> ¶ 37.)
Results of Elijah's laboratory testing were received at 4:44
p.m., indicating his white blood cell count was 12, his
hemoglobin was 7.2, his hematocrit was 20.3, and his platelet
count was 144.  (<u>Id.</u> ¶ 39.)

      Ferguson did not see Elijah until 5:15 p.m., and was
provided with a history of a five-day-old male with Factor VIII
deficiency, seizure activity, and feeding issues.  (<u>Id.</u> ¶ 40.)
Ferguson's exam notes indicate that Elijah appeared normal but

3

for poor oral intake, mild right eye deviation, and a soft cephalohematoma that became more firm during Elijah's time in the emergency department; his report did not mention the bruising the nurses had documented earlier.  (Id. ¶ 41.) Ferguson ordered Elijah's bloodwork be done, but did not order Factor VIII medicine or an immediate CT scan.  (Id. ¶ 42.)  At 6:46 p.m., a nurse observed that Elijah had an arched back, stiffness of the arms, eyes drifting to the left, and that his heart rate had increased to 181 beats per minute, his respiratory rate had increased to 42 per minute, and his oxygen saturation was down to 87%.  (Id. ¶ 46.)  Ferguson was notified of these changes, but still did not order Factor VIII medicine or an immediate CT scan.  (Id. ¶ 47.)

     At some time after becoming apprised of these changes to Elijah's condition, Ferguson called Elijah's pediatrician, who arrived at the emergency department at 7:23 p.m.  (Id. ¶¶ 49-50.)  Elijah's pediatrician advised Ferguson to have Elijah transferred immediately to a hospital with a Hemophilia Treatment Center.  (Id. ¶¶ 50-51.)  Accordingly, at 7:34 p.m., Ferguson requested Elijah be transported to Ruby Memorial Hospital by aeromedical transport.  At 7:45 p.m., Ferguson ordered a CT scan of Elijah's head.  (Id. ¶ 57.)  Elijah also underwent hemoglobin and hematocrit tests, showing levels of 6.4

and 18.4, respectively.  (Id. ¶ 58.)  At 8:48 p.m., medical
personnel started Elijah on a transfusion of type-O negative
blood; this was not Elijah's blood type, but a type-specific
transfer was unavailable due to the urgent nature of the
transfusion.  (Id. ¶¶ 59, 68-69.)  The CT scan was finally
performed at 9:08 p.m.; the results at 9:21 p.m. showed
significant injuries, including internal bleeding, fractures,
and swelling.  (Id. ¶ 61.)  At around 9:30 p.m., the transport
team administered intubation and mechanical ventilation.  (Id. ¶
72.)

        After the transfer to Ruby Memorial Hospital, Elijah
had to be put on life support.  (Id. ¶ 75.)  Upon the advisement
that Elijah had no chance of recovery due to the brain bleeding
he had suffered prior to his transfer, Kimble and Moore chose to
remove Elijah from life support on March 3, 2014.  (Id.)

        Plaintiffs filed this action in the Circuit Court of
Wood County, West Virginia on March 10, 2015.  Plaintiffs'
complaint is somewhat disorganized, as multiple claims are
alleged under single counts while other counts appear to lack
any cognizable claims.  In addressing defendants' motion to
dismiss, the court, due to the complaint's unusual structure,
will deal with each potential claim individually rather than

addressing each count individually.  Plaintiffs allege the
following claims:

1. Negligence of Dr. Richard Ferguson in failing to meet the
   standard of care required of a physician while treating
   Elijah.  (Compl. ¶¶ 103-20.)

2. Negligent infliction of emotional distress by Dr. Richard
   Ferguson on Kimble and Moore.  (<u>Id.</u> ¶ 122(a)-(b).)

3. Fraudulent misrepresentation by MESA of TeamHealth
   concerning the quality of the emergency department where
   Elijah was treated.  (<u>Id.</u> ¶¶ 138-43, 154, 176-80.)

4. Corporate negligence of MESA of TeamHealth in failing to
   meet the standard of care required of an emergency
   department facility.  (<u>Id.</u> ¶¶ 182-94.)

Defendants removed on April 14, 2015, pursuant to 28
U.S.C. § 1441(a).  Diversity jurisdiction is proper inasmuch as
plaintiffs and defendants are diverse, and the amount in
controversy exceeds the $75,000 amount as required under 28
U.S.C. § 1332(a).

II.

Defendants seek dismissal on three grounds.  First,
dismissal of the entire complaint is sought based on plaintiffs'
violation of the West Virginia Medical Professional Liability
Act, which bars the inclusion of specific dollar amounts in

complaints for medical malpractice actions. (Defs.' Mem. Supp. Mot. Dismiss 2.) Defendants request in the alternative that the court strike the specific dollar amounts from the complaint under Fed. R. Civ. P. 12(f). (Id.) Defendants next ask for dismissal of plaintiffs' punitive damages claim, on the ground that plaintiffs have not alleged any claims sufficient to support such an award. (Id. at 2-3.) Finally, defendants seek the dismissal of plaintiffs Amethyst Dawn Kimble Moore and Timothy Allen Moore in their individual capacities as plaintiffs, on the ground that they are improper parties in a wrongful death action. (Id. at 3-4.)

Plaintiffs argue in their response that the legislative intent behind the prohibition on listing specific dollar amounts in West Virginia Code § 55-7B-5(a) was only to bar plaintiffs from listing exaggerated amounts, not amounts reasonably linked to injuries suffered. (Pls.' Mem. Resp. Defs.' Mot. Dismiss 9.) On the issue of punitive damages, plaintiffs argue that their claim should not be dismissed, as they have alleged a level of heightened negligence sufficient to allow for punitive damages under West Virginia law.[3] (Id. at 9-

_____

[3]On March 10, 2015, the West Virginia legislature passed a new law limiting punitive damages to cases in which "a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a

10.)  Finally, plaintiffs acknowledge that they are not proper parties in their individual capacities for their claims brought under the wrongful death statute.  (Id. at 12.)  They assert, however, that they maintain separate claims for the emotional distress they experienced while watching their son suffer in the hospital prior to his death.  (Id. at 12-13).

Defendants timely filed their reply to plaintiffs' response.  As to the inclusion of specific dollar amounts in plaintiffs' complaint in violation of West Virginia law, defendants argue that the court must follow the plain meaning of the statute where it is clear, rather than seek to interpret legislative intent.  (Def.'s Reply Pls.' Resp. 2.)  On the issue of punitive damages, defendants argue that all of plaintiffs' allegations supporting a claim of heightened negligence are conclusory in nature and thus are not entitled to a presumption of truth, leaving the record bare of factual allegations sufficient to support an award of punitive damages.  (Id. at 3-4.)  Finally, on the issue of plaintiffs' standing in their individual capacities, defendants argue that the only claims delineated in the complaint are those permitted by the wrongful

---

conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code § 55-7-29.  This law became effective June 8, 2015.  Inasmuch as neither party has suggested that this provision applies retroactively, the court will not address it either.

death statute, and to the extent plaintiffs set out another claim, it is a filial loss of consortium claim not recognized under West Virginia law.  (<u>Id.</u> at 5-6).


III.


A.   The Governing Standard


        Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

        The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563-64)); <u>see also</u> <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  <u>Twombly</u>,

550 U.S. at 555.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302.

As noted in Iqbal, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 572); see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins.

Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

B.  Discussion

### 1. MPLA Violation

Defendants first assert that plaintiffs' entire complaint should be dismissed as violative of the West Virginia Medical Professional Liability Act by listing specific dollar amounts in paragraphs 124, 126, and 127; defendants request in the alternative that these paragraphs be struck from the complaint.  (Defs.' Mem. Supp. Mot. Dismiss 2.)  The relevant portion of the statute provides "[i]n any medical professional liability action against a health care provider, no specific dollar amount or figure may be included in the complaint, but the complaint may include a statement reciting that the minimum jurisdictional amount established for filing the action is satisfied."  W. Va. Code § 55-7B-5(a).

In the absence of ambiguous language, courts should interpret a statute according to its plain meaning.  <u>Caminetti v. United States</u>, 242 U.S. 470, 485 (1917); <u>Hillman v. I.R.S.</u>,

11

263 F.3d 338, 342 (4th Cir. 2001).  Plaintiffs have directly violated the statute by listing the specific dollar amounts set out in their complaint.  (Compl. ¶¶ 124, 126-27.)  Dismissal of the entire complaint for this violation is unnecessary, and the court finds that defendants' alternative request to strike the paragraphs including specific dollar amounts from the complaint is the proper remedy.

Accordingly, this ground of the motion to dismiss is denied, and the motion to strike is granted.

## 2. Punitive Damages

Defendants next contend that plaintiffs have not pled a viable claim for punitive damages.[4]  (Defs.' Mem. 2-3.)  In their briefing, defendants focus solely on whether plaintiffs adequately pled that Ferguson's negligence rose to a level of

---

[4] West Virginia law does not recognize an independent cause of action for punitive damages.  Cook v. Heck's Inc., 176 W. Va. 368, 376, 342 S.E. 2d 453, 461 n.3 (1986).  Federal courts have noted that, as a form of relief rather than an independent claim, punitive damages are not subject to dismissal under Rule 12(b)(6).  See Rathbone v. Haywood Cnty., No. 1:08CV117, 2008 WL 2789770, at *2 (W.D.N.C. July 17, 2008); Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 3d 620, 631 (W.D. Va. 2014); Hamrick v. Rest. Mgmt. Grp., LLC, No. 2:14-CV-02762, 2014 WL 4698489, at *2 n.4 (S.D. W. Va. Sept. 19, 2014).  Nonetheless, the court will address the availability of punitive damages against each of the defendants.

culpability to potentially merit an award of punitive damages.
(Id., Reply 3-4.)

Under West Virginia law, punitive damages can be
awarded in tort actions "where gross fraud, malice, oppression,
or wanton, willful, or reckless conduct or criminal indifference
to civil obligations affecting the rights of others appear, or
where legislative enactment authorizes it." Syl. Pt. 4, Mayer
v. Frobe, 40 W. Va. 246, 22 S.E. 58 (1895); see also Syl. Pt 3,
Jopling v. Bluefield Water Works & Improvement Co., 70 W. Va.
670, 74 S.E. 943 (1912) ("To sustain a claim for punitive
damages the wrongful act must have been done maliciously,
wantonly, mischievously, or with criminal indifference to civil
obligations."). The Supreme Court of Appeals of West Virginia,
in explaining what distinguishes wanton negligence from mere
negligence, held "it is not necessary that there should be ill
will toward the person injured; but an entire absence of care
for the safety of others, which exhibits its indifference to
consequences, establishes legal wantonness." Syl. Pt. 2,
Todorobak v. McSurley, 107 W. Va. 372, 148 S.E. 323 (1929).

Defendants argue that plaintiffs' allegations against
Ferguson sound in simple negligence, and thus cannot merit an
award of punitive damages. (Defs.' Mem. 3.) Defendants
acknowledge that plaintiffs' complaint contains a section

13

alleging heightened negligence, but defendants argue that these allegations are unsupported by any facts.  (Reply 3-4.) Defendants correctly quote <u>Iqbal</u> that a complaint will not "suffice if it tenders 'naked assertions[s]' devoid of further 'factual enhancement.'" 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).  However, plaintiffs' allegation that the "timeline for the lack of care provided by [Ferguson] demonstrates a complete disregard for the safety of [Elijah]" is not devoid of factual enhancement.  (Compl. ¶ 132.)  Though the complaint has organizational issues, it includes a detailed factual section describing Elijah's timeline of care by Ferguson.  (<u>Id.</u> ¶¶ 22-75.)  Plaintiffs incorporate by reference this factual section into their allegations regarding heightened negligence.  (<u>Id.</u> ¶ 129.)  These factual allegations, taken as true, with all inferences drawn in plaintiffs' favor, along with plaintiffs' assertion that Ferguson showed a "complete disregard for the safety of [Elijah]," are sufficient at this stage to support a claim for wanton negligence, for which punitive damages are proper.

Defendants offer no specific arguments against the availability of punitive damages for plaintiffs' claims against MESA of TeamHealth.  Punitive damages are available in West Virginia for common-law fraud claims.  Syl. Pt. 4, <u>Mayer</u>; <u>see</u>

also <u>Muzelak v. King Chevrolet, Inc.</u>, 179 W. Va. 340, 345, 368 S.E.2d 710, 715 (1988).  Because plaintiffs assert a misrepresentation claim based in fraud against MESA of TeamHealth, punitive damages are available against this defendant.  (Compl. ¶¶ 138-43, 154, 176-80.)

Because plaintiffs have pled claims for which punitive damages could be awarded against each defendant, this ground of the motion is denied.

### 3. Plaintiffs' Standing in their Individual Capacities

Defendants' final ground for dismissal is based on the style of the complaint, which lists the plaintiffs as Amethyst Dawn Kimble, as the Administratrix of the estate of Elijah Allen Moore, and Amethyst Dawn Kimble Moore and Timothy Allen Moore individually.  Defendants argue that this is exclusively a wrongful death action in which plaintiffs have no standing in their individual capacities.  (Defs.' Mem. 3-4.)

The relevant portion of the West Virginia wrongful death statute reads "[e]very such action shall be brought by and in the name of the personal representative of such deceased person."  W. Va. Code § 55-7-6(a).  This statute has been construed to require dismissal of plaintiffs in their individual capacities.  <u>See</u> <u>Jones v. George</u>, 533 F.Supp. 1293, 1307 (S.D.

W. Va. 1982). However, West Virginia law allows a plaintiff to bring a negligent infliction of emotional distress claim based on the same factual circumstances that give rise to a wrongful death suit. Syl. Pt. 4, <u>Stump v. Ashland, Inc.</u>, 201 W. Va. 541, 499 S.E.2d 41 (1997).

Plaintiffs do not dispute that they lack standing in their individual capacities for their claims brought under the wrongful death statute. (Pls.' Mem. Resp. 12.) Rather, they assert that they are properly joined in their individual capacities for their emotional distress claims. (<u>Id.</u> at 12-13.) In their reply, defendants fail to address plaintiffs' claims for negligent infliction of emotional distress; instead, they reassert their belief that all of plaintiffs' claims are based on the wrongful death statute and argue that plaintiffs' attempt to assert individual claims seeks to apply a filial loss of consortium claim not recognized by West Virginia law. (Reply 5-6.)

Because plaintiffs allege claims not derivative of the wrongful death action, this ground of the motion is denied.

IV.


Based upon the foregoing discussion, it is ORDERED that the motion to dismiss be, and hereby is, denied, and the motion to strike be, and hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  June 30, 2015

John T. Copenhaver, Jr.
United States District Judge