IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


AMETHYST DAWN KIMBLE MOORE,
TIMOTHYALLEN MOORE,
AMETHYST DAWN KIMBLE,
ADMINISTRATRIX OF THE ESTATE OF
ELIJAH ALLEN MOORE,
     Plaintiffs,

v.                                        Civil Action No. 2:15-cv-04531

RICHARD FERGUSON, M.D.
AND MESA OF TEAMHEALTH, INC.,
A foreign corporation,
     Defendants.

**MEMORANDUM OPINION AND ORDER**

     Pending before the Court is Motion for Protective Order (ECF No. 27) filed by Defendant

Marshall Independent Physicians, LLC, formerly known as Marshall Independent Physicians

Services, LLC, and improperly identified as MESA of TeamHealth, Inc., (hereinafter MIP).[1]

Plaintiffs' Response to Defendant Marshall Independent Physician, LLC's Motion for Protective

Order (ECF No. 29) was filed on July 5, 2015.   A Joiner in the Motion for Protective Order by

Marshall Independent Physicians, LLC (formerly styled as MESA of TEAMHEALTH, INC.) and

Reply of Richard A. Ferguson, M.D. to Plaintiffs' Response to Defendant Marshall Independent

Physician, LLC's Motion for Protective Order (ECF No. 36) was filed on July 13, 2015.

**I.  Background Facts**

     Plaintiffs, Amethyst Dawn Kimble Moore, Timothy Allen Moore, and Amethyst Dawn

Kimble, Administratrix of the Estate of Elijah Allen Moore, filed a complaint in the Circuit Court

---

[1] Plaintiffs filed a Proposed Order correcting style of civil action on July 3, 2015 (ECF No. 28).  An Order granting
Plaintiffs' Motion to Correct Style of Civil Action was filed on July 17, 2015 (ECF No. 38).

of Wood County, West Virginia against Richard A. Ferguson, M.D. and MESA TeamHealth, asserting claims for medical negligence, tort, false advertising, corporate negligence and wrongful death.  The claims arise out of the medical care provided to their son, Elijah Allen Moore, on February 19, 2014, at Camden Clark Medical Center.  The Plaintiffs allege that Dr. Richard Ferguson was the Emergency Department Physician on duty when they arrived at the hospital and was assigned to provide care to Elijah Allen Moore.  Plaintiffs assert that they took their son to the local emergency medicine department based in part because of advertising that MESA TeamHealth participated in touting the medical qualifications of its Emergency Medicine physicians (ECF No. 1).  Plaintiffs assert that Dr. Ferguson was not properly trained in emergency medicine nor was he properly trained by his employer MESA TeamHealth. (*Id.*)

On April 14, 2015, Defendants Richard A. Ferguson, M.D. and Marshall Independent Physician Services, LLC (improperly identified in the complaint as a non-incorporated trade name, MESA of TeamHealth, Inc.) filed a Joint Notice of Removal (ECF No. 1-4).

It appears that Plaintiffs' initial discovery requests were served on the Defendants while the case was pending in the Circuit Court of Wood County, West Virginia and prior to the removal to Federal Court.   Upon review of the docket sheet from the Circuit Court of Wood County, on March 16, 2015, Plaintiffs filed First Combined Discovery Requests to Richard Ferguson, M.D., then additionally filed First Combined Discovery on March 18, 2015 (ECF No. 1-2).[2]  In the discovery requests to Defendant Richard A. Ferguson, M.D., Plaintiffs asked for a copy of the independent contractor agreement with MESA TeamHealth and a copy of the declarations page and any insurance policy which provides coverage for claims made in Plaintiffs' Complaint. In the

---

[2] It appears the March 18, 2015 filing was to Defendant MESA of TeamHealth.

discovery requests to MIP, Plaintiffs asked for any documents MIP supplied to Defendant Richard A. Ferguson prior to him being an independent contractor for MIP, any prior and present contracts MIP had or have with Defendant Richard A. Ferguson, and copies of declarations page and insurance policy which provides coverage for the claim made in Plaintiff's Complaint, including any declarations page for any umbrella or excess liability coverages.

On May 29, 2015, Defendant Ferguson filed Responses on Behalf of Defendant, Richard A. Ferguson, M.D., to Plaintiffs' First Combined Discovery Requests (ECF No. 19).   Defendant Ferguson objected to any request to discover information that was confidential and privileged based upon the Health Insurance Portability and Accountability Act of 1996, as well as any privileged and confidential information that relate to this matter.   However, Defendant was agreeable to producing his independent contractor agreement with MIP contingent upon entry of a mutually agreeable protective order.

On May 30, 2015, Defendant MIP filed Response of Marshall Independent Physicians, LLC (improperly named as MESA of Team Health, Inc.) to Plaintiffs' First Combined Discovery Requests (ECF No. 20).  MIP objected to these requests on the basis that the information requested was confidential commercial information.  However, in an effort to provide Plaintiffs with the requested information while protecting MIP's interests, MIP provided a proposed protective order to Plaintiffs.  Plaintiffs refused to sign the proposed protective order and indicated that they did not believe the documents were subject to protection.  Unable to resolve this dispute, MIP filed a Motion for Protective Order (ECF No. 27).

## II.    Contentions of the Parties

MIP claims that the information requested by the Plaintiffs concerning MIP's contractual relationship, including contractual reimbursements, with Dr. Ferguson and declarations page for

insurance policy coverages are confidential commercial information.  MIP asserts that it developed its professional network with numerous physicians and other business entities in a competitive environment by participating in a compilation of independent contractor agreements, insurance contracts and other individually negotiated agreements, the terms of which play an essential role in MIP's competitiveness in the healthcare, physician services, and risk management and insurance markets.  MIP claims that it negotiated and participated in these contracts with the intent that they remain confidential and disclosing these materials would jeopardize the effectiveness of numerous key components of their developed business strategy.  MIP contends that it has expended significant time, manpower, and expertise in negotiating the documents utilized in reaching contractual agreements with physicians and other business entities; the manner in which the documents are used in this process and the ultimate terms of final agreements are key to MIP's competitiveness in the market.  Disclosure of these negotiated terms would leave MIP susceptible to widespread use of their meticulously developed system for recruiting physicians and negotiating contracts.  Further, disclosure of documents with embedded confidentiality provisions would undercut MIP's credibility and potentially hinder its ability to contract with physicians in the future (ECF No. 27).  MIP argues that because Plaintiffs have alleged negligence claims related to the medical treatment of Elijah Moore, Dr. Ferguson's reimbursement pursuant to the independent contractor agreement bears no weight on Plaintiffs' negligence claims and the information sought is not relevant to the merits of this action.

In his reply to MIP's Motion for Protective Order, Defendant Ferguson joins in the Motion for Protective Order asserting that because this is a medical negligence action only, Dr. Ferguson's financial information and status is private to him.  That the only purpose plaintiffs would have in this matter to publicize Dr. Ferguson's private financial information outside of the confines of this

4

litigation would be to annoy, embarrass or harass him or to mislead a potential jury pool into a pre-conceived opinion with respect to Dr. Ferguson's personal wealth  (ECF No. 36).  Defendant Ferguson disagrees with Plaintiffs' contention that financial information discovery may become relevant if Plaintiffs secure entitlement to a punitive damage instruction.  Defendant Ferguson contends that discovery is just commencing in this matter and because Plaintiffs have not produced or developed any evidence in support of their claim for punitive damages, discovery on financial matters related to Dr. Ferguson and/or MIP should be prohibited at this time.

In response, Plaintiffs contend that the requested relief is improper because Defendant MIP has not made a proper showing that it is entitled to a protective order and that how much Dr. Ferguson is being paid is relevant to this litigation, as well as the way he is paid.  Plaintiffs claim that MIP is requesting a blanket protective order for the documents it believes are confidential which Plaintiffs have denied because the documents are not subject to protection.  Plaintiffs assert that if there is a legitimate basis for protecting information from disclosure, it will be protected, but only after a proper showing.  Plaintiffs assert that this Court should protect the transparency of the judicial system instead of requiring these Plaintiffs to enter blanket protective orders that put a cloak of secrecy over the process and the documents generated therein (ECF No. 29).  Plaintiffs claim that Defendant MIP is not going to be prejudiced by the disclosure of its insurance policy. Plaintiffs further claim that the amount Defendant MIP paid for the premium could have been redacted, without objection from Plaintiffs.  (*Id.*)    In Plaintiffs' view, Defendant MIP and Defendant Ferguson want a blanket protective order requiring all information about the Defendants' insurance policies be kept secret under a cloak of secrecy and returned to them at the close of the litigation.

III.     **Motion for Protective Order**

Federal Rule of Civil Procedure 26(b)(1) permits very broad discovery, encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.  *Young v. State Farm Mut. Auto Ins. Co.*, 169 F.R.D. 72, 1996 U.S. Dist. LEXIS 19923 (S.D.W.Va. 1996); *Jackson v. Kroblin Refrigerated Xpress, Inc.*, 49 F.R.D. 134, 1970 U.S. Dist. LEXIS 12851 (N.D.W.Va. 1970).

Discovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence, should be accessible.  *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947).  The court should thus consider whether the materials sought are relevant to the plaintiff's cause of action.   Discovery is of broader scope than admissibility, and discovery may be had of inadmissible matters.  *See Trammel v. United States*, 445, U.S. 40, 48, 100 S. Ct. 906, 911, 63 L. Ed. 2d 186 (1980).  The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears on or may bear on any issue that is or may be in the case.  *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (citing *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 350, 98 S. Ct. 2380, 57 L. Ed. 2 253 (1978)). Discovery that seeks relevant information may nevertheless be restricted or prohibited if necessary to protect a person or party from annoyance, oppression, or undue burden or expense.

Federal Rule of Civil Procedure 26(c)(1)(G) allows the court, for good cause, to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  In order for the court to apply the rule, two criteria must exist.  First, the material sought to be protected must be "a trade secret

6

or other confidential research, development, or commercial information."  Second, there must be a "good cause" basis for granting the restriction.  The party seeking protection bears the burden of establishing both the confidentiality of the material and the harm associated with its disclosure. *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md.1987) (citing *Cipollone v. Liggett Group, Inc.*, 785 F. 2d 1108, 1121 (3rd Cir. 1986).  However, once these elements are demonstrated, the burden shifts to the party seeking disclosure to show that the material is relevant and necessary to its case.  *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (D.C. Fla. 1985).  The court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled."  *Pansy v. Borough of Stroudsburg*, 23 F. 3d 772, 787 (3rd Cir. 1994) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 432-33 (1991).

If the court determines that disclosure is required, the issue becomes whether the material should be "revealed only in a specified way."  Fed. R.Civ. P. 26(c)(1)(G) "Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public." *Id.*  Factors to consider when deciding if and how to limit disclosure include:

> (1)  whether disclosure will violate any privacy interests;
>
> (2)  whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> (3)  whether disclosure of the information will cause a party embarrassment;
>
> (4)  whether confidentiality is being sought over information to public health and safety;
>
> (5)  whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefiting from the order of confidentiality is a
public entity or official; and

(7) whether the case involves issues important to the public.

*Pansy*, 23 F.3d at 787-91.

Although the court exercises broad discretion in deciding "when a protective order is
appropriate and what degree of protection is required," *Furlow v. United States*, 55 F. Supp.2d
360, 366 (D.Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199,
81 L. Ed. 2d 17 (1984)), protective orders "should be sparingly used and cautiously granted."
*Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D.Md. 2006) (quoting *Medlin v. Andrew*, 113
F.R.D. 650, 653 (M.D.N.C. 1987).

Defendant MIP is willing to disclose the information requested by the Plaintiffs for
purposes of prosecuting their claims, but seeks a protective order because the documents contain
confidential information and that such information produced should be limited to this legal action.[3]
Defendant MIP further ask that certain confidential commercial information be redacted entirely
prior to disclosure, documents such as Defendant's Ferguson's contractual reimbursements,
premiums paid on insurance contracts, and lists of locations and entities covered by such insurance
contracts other than the location and entity at issue.  Plaintiffs conceded that the amount Defendant
MIP paid for the premium could have been redacted, without objection from Plaintiffs. (ECF No.
29 at 3).  Notwithstanding, Plaintiffs contend that the request for a protective order is improper
because the documents are not subject to protection.  In Plaintiffs' view, MIP is requesting a
blanket protective order and this Court should protect the transparency of the judicial system

---

[3] In a letter dated June 1, 2015, from Barry Taylor, counsel for Defendant MIP, to Plaintiffs' counsel, David A. Sims,
Mr. Taylor represents that he now understands that Dr. Ferguson has no objection to disclosure of his Agreement
consistent with a mutually satisfactorily protective order (ECF No. 27-2).

8

instead of requiring these Plaintiffs to enter into a blanket protective orders that put a cloak of secrecy over the process and the documents generated therein.  Plaintiffs' argument is not persuasive.  Consequently, the remaining issues are whether a protective order is proper and whether disclosure of the materials should be limited to the instant action.  This requires the Court to weigh the potential harm or injury to Defendant MIP and Defendant Ferguson from unfettered disclosure of the confidential commercial information against privacy interests and availability to the public.  *Pansy*, 23 F.3d at 787.  To resolve these issues, the Court needs to address two questions; first, are the documents requested confidential commercial information and second, have MIP and Defendant Ferguson shown good cause for a protective order.

## IV.     Confidential Commercial Information

The question of whether a corporation's compilation of independent contractor agreements, insurance contracts and other individually negotiated agreements constitute "confidential commercial information" under Rule 26(c) depends upon the nature, purpose and use of the research.  To merit protection under Rule 26(c), commercial information must be more than just routine data; instead, it must be important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public.  *Ohio Valley Environmental Coalition v. Elk Run Coal Company, Inc.*, 291 F.R.D. 114 (S.D.W.Va. 2013) (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006); see also *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("Confidential commercial information" is "information, which disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.")  To better illustrate the type of information entitled to protection under Rule 26(c), courts have likened the characteristics of

9

"confidential commercial information" to those of "trade secrets." *See Massey Coal Services, Inc. v. Victaulic Company of America*, 249 F.R.D. 477, 482 (S.D,W,Va 2008) (citing *West Virginia Code Sec.* § 47-2201(d), "trade secret includes formula, pattern, compilation, program, device, method, technique, or process that derives independent economic value…from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"). When evaluating whether information rises to the level of a trade secret, courts have considered the following factors found in Section 757 of the Restatement of Torts:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the] business to guard the secrecy of the information; (4) the value of the information to [the] business and to [its] competitors; (5) the amount or effort or money expended…in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *United States v. International Bus. Mach. Corp.*, 67 F.R.D. 40, 46-47 (S.D.N.Y. 1975).

> Thus, consideration of these factors is useful in discerning whether corporate research qualifies as confidential commercial information entitled to protection under Rule 26(c).

Examples of confidential commercial information entitled to protection under Rule 26(c)(1)(G) include customer lists and revenue information, *Nutratech, Inc. v Syntech Intern, Inc.,* 242 F.R.D. 552, 555 (N.D.Cal. 2007); product design and development and marketing strategy, *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 305 (D. Ill. 1994); and commercial financial information, *Vollert v. Summa Corp.*, 389 F. Supp. 1348, 1352 (D. Hawaii 1975). Moreover, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop*

*Prot.*, 224 F.R.D. 53, 57 (D. Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.*, 199 WL 13257, at *2 (S.D.N.Y. 199)).

In this case, MIP claims that it has established business relationships with numerous physicians and developed a compilation of independent contractor agreements, insurance contracts and other individually negotiated agreements, "the terms of which play an essential role in MIP's competitiveness in the healthcare, physician services and risk management and insurance markets" (ECF No. 27).  MIP argues that it:

> [H]as expended significant time, manpower and expertise in negotiating the documents utilized in reaching contractual agreements with physicians and other business entities; the manner in which the documents are used in this process and the ultimate terms of final agreements are key to MIP's competitiveness in the market.  Disclosure of these negotiated terms would leave MIP susceptible to widespread use of their meticulously developed system for recruiting physicians and negotiating contracts. (ECF No. 27).

Plaintiffs assert that while MIP's insurance contract, declarations page and independent contractor agreement "may be commercial information, they are not trade secrets" (ECF No. 29). Plaintiffs argue that "Defendant MIP has not shown with any specificity that the dissemination of the information would cause it any competitive harm or harm to its financial position."  (*Id.*)

Defendant MIP, in this matter, bears the burden of establishing both the confidentiality of the material and the harm associated with its disclosure, as it is the party asserting the request would produce confidential information.  Mere assertions unsupported by specific contentions, evidence or affidavits do not suffice.

MIP maintains a network of business relationships with numerous physicians and other business entities in a competitive environment.  MIP developed its professional network by participating in a compilation of independent contractor agreements, insurance contracts and other

individually negotiated agreements, the terms of which play an essential role in MIP's competitiveness in the healthcare, physician services and risk management and insurance markets. MIP negotiated and participated in these contracts with the intent that they remain confidential. Many documents contain express confidentiality provisions prohibiting or limiting disclosure of information. Disclosing these materials would affect the success of numerous components to MIP's developed business strategy (See ECF No. 27).

The documents request in the present matter contain confidential commercial information. The information sought by Plaintiffs is not disclosed to the public. The information specific to MIP's contracts is exclusive to MIP. The contracts would reveal information specific to MIP's negotiations, operation, financial position, strategic planning and client lists. This confidential information has provided MIP a financial and competitive advantage which would be lost if released to the public.

Accordingly, the undersigned agrees with Defendant MIP that the individually negotiated contractual agreement with Defendant Ferguson provides Defendant MIP with a financial or competitive advantage against competitors. Also, Defendant MIP has provided specific contentions regarding the confidentiality of the additional material requested.

## V.   Good Cause

Confidential commercial information may be protected from disclosure by the court when the party seeking protection has shown "good cause" for doing so by establishing both the confidentiality of the material and the harm associated with its disclosure. Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005). Good cause for a protective order must be

12

demonstrated by the moving party. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Merit Industries, Inc. v. Feuer*, 201 F.R.D, 382, 384-385 (E.D. PA 2001).

Where the party seeking protection under Rule 26 is a business, "it must show that disclosure would cause significant harm to its competitive and financial position." *Waterkeeper Alliance v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011) (quoting *Minogue v. Modell*, 2011 WL 1308553, at *4 (D.Md. Mar. 30, 2011). This showing must be made through "specific demonstrations of fact, supported where possible by affidavits and concrete examples rather than broad, conclusory allegations of potential harm." *Deford*, 120 F.R.D. at 653; see also *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Sufficient specificity standard requires a likely and significant injury). The party bearing the burden of demonstrating that the discovery sought lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the disclosure outweighs any need for the information. *UAI Technology, Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (defining relevant information broadly as any matter that bears on or could bear on "any issue that is or may be in the case) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed. 2d 253 (1978).

A corporation demonstrates good cause under Rule 26(c) by showing an identifiable harm to its competitive and financial position, which is supported by concrete examples and articulated reasoning. MIP alleges two harms. First, MIP alleges that it will suffer a competitive disadvantage if others are permitted access to the contracts, insomuch as competitors could obtain their "meticulously developed system for recruiting physicians and negotiating contracts." Further, disclosing documents "with embedded confidentiality provisions would undercut MIP's credibility and potentially hinder its ability to contract with physicians in the future." MIP asserts

that Dr. Ferguson's independent contractor agreement contains such a confidentiality provision, and he has not agreed to disclosure of the agreement unless a mutually satisfactory protective order is entered (See ECF No. 27-4).  Second, MIP asserts that certain confidential information should be redacted "entirely prior to disclosure of certain documents, including Dr. Ferguson's contractual reimbursements, premiums paid on insurance contracts and lists of locations and entities covered by such insurance contracts other than the location and entity at issue (ECF No. 27).

Importantly, Defendant MIP is requesting a protective order and not objecting to producing the material.  The court is required "to weigh fairly the competing needs and interests of parties affected by [the] discovery." *Seattle Times v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed. 2d 17 (1984).  As Plaintiffs will receive the discovery requested, albeit subject to a protective order, their position that "This Court should protect the transparency of the judicial system instead of requiring these Plaintiffs to enter into blanket protective orders that put a cloak of secrecy over the process and the documents generated therein" does not outweigh Defendant MIP's competing interests and need to uphold contractual obligations to non-parties prohibiting or limiting disclosure of information.

Consequently, this Court finds that MIP has met its burden of showing the good cause required to demonstrate harm it may suffer from producing the confidential materials in question without a protective order.  Disclosing the contracts will violate the confidentiality provisions contained within the negotiated agreements and cause harm to MIP insomuch as competitors could obtain the confidential commercial information

### a. Punitive Damages

Defendant MIP asserts that "Certain information contained within Dr. Ferguson's independent contractor agreement should be redacted entirely before disclosure" (ECF No. 27). Defendant MIP argues that Dr. Ferguson's reimbursement pursuant to the independent contractor agreement "is not relevant to the merits of this action.  Plaintiffs have asserted negligence claims related to the treatment of Elijah Moore against the defendants in their Complaint." (*Id.*)  MIP asserts that Dr. Ferguson's reimbursement amount pursuant to the independent contractor agreement has no bearing on Plaintiffs' negligence claims as Plaintiffs have not demonstrated a *prima facie* claim for punitive damages, therefore, any information related to it should be redacted.

Plaintiffs argue that "how much Dr. Ferguson is being paid is relevant to this litigation, as well as the way he is paid" (ECF No. 29).  Plaintiffs state that MIP's position ignores two things: (1) their Complaint which included the claim that "Defendant Ferguson acted with conscious disregard for the safety of Elijah Allen Moore" and (2) the Court's denial of Dr. Fergusons's motion to dismiss the claims for punitive damages in the Court's Order dated July 1, 2015 (ECF No 26).

Defendant Ferguson asserts that "The only purpose plaintiffs would have in this matter to publicize Dr. Ferguson's private financial information outside of the confines of this litigation would be to annoy, embarrass or harass him or to mislead a potential jury pool into a pre-conceived opinion with respect to Dr. Ferguson's personal wealth" (ECF No. 36).  Defendant Ferguson argues that Plaintiffs have not demonstrated entitlement to punitive damages for this Court to consider a punitive damages instruction.  He asserts that Plaintiffs have simply stated unsupported allegations for punitive damages without producing any evidence.

Although the District Courts within the Fourth Circuit are not in agreement as to whether a showing must be made before a plaintiff is entitled to pretrial discovery of financial statements relevant to a punitive damages claim, the case law in this district supports "the requirement that a plaintiff demonstrate her claim for punitive damages is viable before discovery of a defendant's financial worth." *Robinson v. Quicken Loans Inc.*, 2013 U.S. Dist. LEXIS 56219, *12-13 (S.D. W.Va. 2013). In *Chesapeake Appalachia LLC v. Mountain V Oil & Gas, Inc.*, No. 2:11-cv-00207, 2012 U.S. Dist. LECIS 130579, 2012 WL 4045729 (S.D. W.Va. Sept. 13, 2012), Judge Johnston approved Magistrate Judge Stanley's conclusion that "it is premature to permit discovery of extensive proprietary information and documents [including profit and loss statements] at a point in this litigation when it is not clear that the claim for punitive damages is viable."

This Court held in *Robinson* that the plaintiffs were required to make a *prima facie* claim for punitive damages before being entitled to discovery of a defendant's financial records. This Court agrees with the holding in *Robinson* and concludes that to make a *prima facie* claim for punitive damages in order to be entitled to discovery of a defendant's financial worth, a plaintiff must produce some factual evidence in support of her claim. As to Plaintiffs' argument that the Court's denial of Dr. Fergusons's motion to dismiss the claims for punitive damages by Order dated July 1, 2015, warrant disclosure of a defendant's financial records, this Court find that merely surviving a motion to dismiss is insufficient. However, surviving a motion for summary judgment would warrant such disclosure.

The Fourth Circuit has held that "a defendant's financial position is a proper consideration in assessing punitive damages." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U..S. 1, 22, 11 S. Ct. 1032, 113 L. Ed. 2d 1 (1991)). In *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155

L.Ed. 2d 585 (2003), the Supreme Court held that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." Accordingly, this Court finds that the disclosure of Dr. Ferguson's payment amount pursuant to the independent contractor agreement is premature at this time and, therefore, should be redacted.

### VII. Redact Information

Defendant MIP asserts that "Certain information contained within Dr. Ferguson's independent contractor agreement should be redacted entirely before disclosure" (ECF No. 27). Defendant MIP argues that Dr. Ferguson's reimbursement pursuant to the independent contractor agreement is not relevant to the merits of this action and bears no weight on Plaintiffs' negligence claims. Defendant MIP requests that any information related to Dr. Ferguson's reimbursement be redacted from the agreement prior to disclosure.

In addition, Defendant MIP requests that the following specific information contained in the insurance contracts be redacted entirely before production:

- Premiums paid by MIP on any insurance contract should be protected. Defendant MIP supports this request by asserting that "Unqualified disclosure of premiums paid would hinder MIP's ability to effectively compete in the market by revealing MIP's negotiation efforts to its competitors. Furthermore, the premiums MIP pays for its insurance are irrelevant to this action and should not be subject to disclosure."

- Lists of covered entities and locations should be redacted entirely from insurance contracts prior to disclosure. Defendant MIP argues that "Federal courts repeatedly have protected client lists from unqualified disclosure even when the lists arguably were relevant to the action." See, e.g., *Nutratech, Inc. v. Suntech Intern., Inc.*, 242

17

F.R.D. 552, 555 (N.D. Cal. 2007) (finding that customer lists are confidential).  Rule 26(b)(1) states that the scope of discovery allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Defendant MIP argues that whether the insurance contract covers locations unrelated to the allegations of Plaintiffs' complaint is irrelevant to this case (ECF No. 27).

Plaintiffs responded by asserting "Defendant MIP is not going to be prejudiced by the disclosure of its insurance policy.  The amount Defendant MIP paid for the premium could have been redacted, without objections from Plaintiffs."  In regards to lists of covered entities and locations from the insurance contracts, Plaintiffs assert that "Defendant MIP must offer some proof, which it has not done, that disclosure of the information would be harmful to it" (ECF No. 29).  However, MIP has met its burden by demonstrating that "Unqualified disclosure of premiums paid would hinder MIP's ability to effectively compete in the market by revealing MIP's negotiation efforts to its competitors" (ECF No. 27).  Additionally, MIP has "offered to produce the same after entry of a suitable protective order." (*Id.*)

For the reasons discussed above, the Court finds that the documents requested contain confidential commercial information and that Defendant MIP has shown good cause for a protective order.  Therefore, the Court **GRANTS** Defendant MIP's Motion for Protective Order (ECF No. 27).  The Court **ORDERS** the parties to enter an agreed stipulated protective order on or before January 12, 2016.  This Court **ORDERS** Defendant MIP to provide full and complete answers to the discovery requests addressed in its Motion for Protective Order (ECF No. 27), on or before January 22, 2016.  The Court **ORDERS** the following be redacted: the amount Defendant MIP paid for Dr. Ferguson's insurance policy's premium, Dr. Ferguson's payment under the

independent contractor agreement[4] and the list of covered entities and locations covered by the insurance contract that are unrelated to the allegations of Plaintiffs' complaint.

The Clerk is directed is directed to forward a copy of this Order to counsel of record.

Enter:  December 30, 2015.

Dwane L. Tinsley
United States Magistrate Judge

---

[4] This issue may be raised again after Plaintiffs have demonstrated a *prima facie* claim for punitive damages.